Ross WEBSTER, Jr., et al.,
Plaintiffs–Appellees,

v.

Dewey SOWDERS, et al.,
Defendants–Appellants,

Versar, Inc., Intervenor.

Nos. 86–6309, 87–5198.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 4, 1988.

Decided May 18, 1988.

Barbara W. Jones, argued, Corrections Cabinet, Office of Gen. Counsel, Frankfort, Ky., for defendants-appellants.

Robert E. Reeves, Daniel R. Dolan, Lexington, Ky., Andrew S. Lipton, Cincinnati, Ohio, Gary E. Powell, argued, for plaintiffs-appellees.

Before MERRITT, KENNEDY and KRUPANSKY, Circuit Judges.

MERRITT, Circuit Judge.

The principal questions at issue on this appeal concern the limits on a district court's authority (1) to award interim attorney fees under 42 U.S.C. § 1988 without findings and conclusions respecting liability, (2) to impose the cost of a court-appointed monitor upon a defendant under Fed.R. Evid. 706(b); and (3) to impose Rule 11 sanctions on a litigant for undertaking an appeal considered frivolous by the District Court.

## I.

In late 1985 officials at the Northpoint Training Center, a Kentucky correctional institution, began a program to use inmate labor to remove from prison structures old

insulation material that apparently contained asbestos. Shortly thereafter, a group of inmates brought this class action in the District Court against the state of Kentucky and state prison officials for injunctive relief and damages, claiming that the State visited cruel and unusual punishment upon them when prison officials exposed them to potentially dangerous levels of asbestos. The plaintiffs also included an unspecified state pendent claim.

The complaint was filed March 11, 1986, along with a motion for a temporary restraining order prohibiting the defendants from "affecting or disturbing in any way" the Northpoint asbestos insulation except in emergency situations. The District Court held an abbreviated hearing on March 12 and issued the TRO the next day. On March 21, the TRO was amended to include the plaintiffs and extended. On March 27, a hearing was held on plaintiffs' motion for a preliminary injunction; the District Court found that much of the asbestos removal was "required to be performed by the inmates and none of it was performed according to the applicable federal regulations." The Court further found that there was a "health hazard that might possibly ultimately be life-threatening" to inmates and employees at Northpoint, that "unless immediate action is taken this hazard may be aggravated," and that "an emergency situation exists requiring immediate intervention by the Court."

Findings of Fact and Conclusions of Law on Preliminary Injunction, App. 287–88.

The preliminary injunction was granted; it basically continued the terms of the TRO. In the next few days, the District Court determined that to deal expeditiously with the emergency it was necessary to postpone trial on issues of liability, to postpone discovery, to postpone ruling on the individual defendants' motions to dismiss on the grounds of qualified immunity, to appoint a firm of asbestos-removal experts nominated by the plaintiffs in order to oversee compliance, and to award plaintiffs' counsel interim attorney fees.

The District Court granted the attorney fees by a single order in November 1986 containing two conceptually distinct rulings: for services already performed, it awarded a lump sum of approximately $50,-000 in attorney fees[1] and $1,290 in expenses; and it established a formula for the future according to which plaintiffs' counsel would indefinitely receive reasonable fees for approximately 75 percent of their hours expended each month to assure state compliance with the preliminary injunction. The 75 percent figure was intended to compensate plaintiffs' counsel for performing their monitoring function under the injunctive order but not to compensate them for continuing efforts on the damages claims, on which the District Court had stayed discovery and reserved its rulings, as it had on questions of liability and immunity generally.

1. The State at one point had conceded that plaintiffs "should be considered to have prevailed" in a limited sense because the lawsuit had been "a catalyst" for the State having taken voluntary "affirmative action" to reduce the asbestos danger at Northpoint. Response to Motion for Fees and Litigation Costs, Aug. 25, 1986, App. 507, 509. Accordingly, the State had entered into an agreed order undertaking to pay some 50 percent of plaintiffs' counsel fees through September 1, 1986, totaling some $33,-500 and the $1,290 in expenses. Judge Bertelsman's later order adjusted the 50 percent figure upward to 75 percent; hence the $50,000 sum resulted from that order.

The State later maintained that the entry of the preliminary injunction "does not grant Plaintiffs prevailing party status to the extent that [the District] Court can enter a prospective award of fees until the conclusion of the litiga-

tion or an award beyond that contained in the Agreed Order." Defendants' Memorandum in Support of the Agreed Order, App. 570, 572. The Agreed Order itself stipulated that "Defendants are not waiving their right to appeal any portion of the [District] Court's Order of October 15, 1986." That order was the initial decision by the District Court that established plaintiffs' overall entitlement to attorney fees. App. 566.

On appeal, defendants argue simultaneously that "Plaintiffs had not prevailed on *any* of their claims" and that "[n]o additional fees or expenses should be awarded the Plaintiffs *beyond the initial agreed order* until they prevail on the substance of the Complaint." Brief for Defendants–Appellants 40, 42 (emphasis added). It is therefore unclear to us exactly what Defendants have admitted or whether they now seek to avoid the effect of that admission.

The order also continued the Court's employment of Versar, Inc., the asbestos-removal expert, pursuant to Fed.R.Evid. 706(b). The Court based both prospective decisions on findings that:

> (1) it is not yet clear that the potentially life-threatening asbestos danger at the Northpoint facility has been totally abated; (2) there is a continuous need to monitor this situation; [and] (3) the most efficient way to monitor this situation is to rely on the Plaintiffs' lawyers with the assistance of the Court appointed expert, Versar.

Order Regarding Interim Attorney's Fees Award, Nov. 24, 1986, App. 659, 661. A later order on February 4, 1987, directed the State to pay for Versar's services. App. 666. The record is somewhat unclear, but Versar's fees apparently accrued to about April 1987, when the asbestos in question was walled off. The fees for plaintiffs' counsel continued on until January 1988, when this appeal was heard and this Court issued an interim order suspending further fee payments. Through June 1987, the State apparently had paid some $129,000 to plaintiffs' counsel and an unspecified sum to Versar.

## II.

A threshold issue is whether the obviously interlocutory attorney fee and expert monitor fee orders are appealable. Although ordinarily orders awarding interim fees in the course of litigation are not appealable, *see Hastings v. Maine–Endwell Central School Dist.*, 676 F.2d 893 (2d Cir.1982); *Ruiz v. Estelle*, 609 F.2d 118 (5th Cir.1980), in the circumstances of this case we believe appellate review is appropriate.

The Supreme Court recently has emphasized that appellate jurisdiction to review interlocutory orders in this era of "modern litigation" when some lawsuits are tried in stages over extended periods centers on the related questions of whether "such review is truly needed" and whether the orders in question have serious and perhaps irreparable consequences. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, —

U.S. ——, ——, 108 S.Ct. 1133, 1141–43, 99 L.Ed.2d 296 (1988); *see also Palmer v. City of Chicago*, 806 F.2d 1316, 1318–19 (7th Cir.1986) (irreparable harm assessed by comparing harm to litigant if no review and harm to district court's management of case if review allowed), *cert. denied*, — U.S. ——, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987).

The attorney fee order of Nov. 24, 1986, imposed a *prospective* burden upon the State to pay large monthly fees without any definite cutoff date, without rulings on central legal issues in the case, without specific findings or conclusions concerning theories of liability and immunity and without assurances that in the event of appellate reversal on the merits the State could recover from plaintiffs' counsel the sizeable amounts already paid (a point conceded at argument by plaintiffs' counsel). We believe that this combination of features, *i.e.*, the weight of the prospective burden and the likelihood of irreparable harm due to nonrecovery, qualify this case for review either (1) as a "collateral order" under 28 U.S.C. § 1291, *see, e.g., Palmer v. City of Chicago*, 806 F.2d at 1317–20; *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), or (2) as the "practical" equivalent of an injunctive order under 28 U.S.C. § 1292(a)(1). Although orders for payment of fees or costs ordinarily do not qualify as injunctive orders appealable under § 1292(a)(1), in this case the State has no other recourse. It has been unable to appeal directly the District Court's order granting the preliminary injunction because the Court simply has never acted on defendants' routine motion to alter or amend that order, filed April 4, 1986. Under these circumstances, both the order granting interim attorney fees and the order to pay Versar are intertwined with the injunctive order and have the requisite "practical" effect. *See United States v. Bedford Associates*, 618 F.2d 904, 915–16 (2d Cir.1980) (§ 1292(a)(1) appeal proper if order related to or in aid of substantive relief sought in lawsuit).

## III.

### A. *Attorney Fees*

■ Interim attorney fees awarded during the pendency of litigation are permissible and thus within the authority of the district court when the court has entered a concrete order that " 'determines substantial rights of the parties,' " meaning "when a party has prevailed on the merits of at least some of his claims." *Hanrahan v. Hampton,* 446 U.S. 754, 757–58, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (per curiam) (quoting *Bradley v. Richmond School Board,* 416 U.S. 696, 723 n. 28, 94 S.Ct. 2006, 2022, n. 28, 40 L.Ed.2d 476 (1974)). Interim fees are "especially appropriate" when a party has prevailed on "an important matter" in a case, even if the party ultimately does not prevail on all issues. *Hampton,* 446 U.S. at 757, 100 S.Ct. at 1989 (quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S. Code Cong. & Admin. News, 5908, 5912 (legislative history of Civil Rights Attorney's Fees Awards Act of 1976). The Supreme Court has declared that, particularly in complex cases of long duration, delaying a fee award until the conclusion of litigation "would work substantial hardship on plaintiffs and their counsel" and discourage the institution of actions that Congress intended to encourage by passage of attorney fee statutes. *Bradley,* 416 U.S. at 723, 94 S.Ct. at 2022.

It is true that a party may be considered "prevailing" under 42 U.S.C. § 1988 when, as here, he has secured preliminary but not yet permanent injunctive relief. *See, e.g., Taylor v. City of Fort Lauderdale,* 810 F.2d 1551, 1558 (11th Cir.1987); *Cha v. Levine,* 701 F.2d 750 (8th Cir.1983).

However, to qualify a plaintiff as "prevailing" the preliminary relief obtained must represent an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff. *See, e.g., Laurenzo by Laurenzo v. Mississippi High School Activities Ass'n,* 708 F.2d 1038 (5th Cir.1983) (preliminary injunction pending appeal). This second type of preliminary relief typically occurs in the granting of a temporary restraining order, but occasionally may underlie even the grant of preliminary injunctive relief. The gaining of such relief represents mere "procedural" success that does not qualify a plaintiff for attorney fees. *See Hampton,* 446 U.S. at 758–59, 100 S.Ct. at 1989–90; *Paragould Music Co. v. Paragould,* 738 F.2d 973 (8th Cir.1984).

The Supreme Court has emphasized that before a plaintiff can be considered prevailing, he must receive "at least some relief on the merits of his claim." *Hewitt v. Helms,* —— U.S. ——, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987). To decide whether a grant of preliminary relief represents "an entitlement to some relief on the merits" of a claim, *Hampton,* 446 U.S. at 757, 100 S.Ct. at 1989, or represents a mere procedural maintenance of the status quo often requires close analysis of the decisional circumstances and reasoning underlying the grant of preliminary relief. See Judge Breyer's incisive discussion in *Coalition for Basic Human Needs v. King,* 691 F.2d 597, 600–02 (1st Cir.1982).

We believe that the plaintiffs' success here in gaining the preliminary injunction represented just such a procedural victory and did not qualify them for attorney fees. Although the District Judge stated that "probability of plaintiffs' success in this action is very great," App. 289, the findings and conclusions are not helpful in determining the nature of the liability found or the operative facts which support liability. Read in context, this statement appears only to represent the District Court's "making a record"—a rote recitation of one of the factors that must underlie the exercise of a trial judge's discretion in granting or denying preliminary injunctive relief. By far the greater emphasis of the District Court was upon the threat of irreparable harm—the "emergency"—posed by the asbestos to the public health of inmates and employees at the institution. The following passage from the Hearing on the Motion for Preliminary Injunction appears to reveal the District Court's actual weighing of these factors:

Maybe there are all kinds of things when you get to the liability, damages, immunities and all kinds of other things. But as far as injunctive relief, there has been irreparable injury by reason of the danger of the health of these inmates, violation of the Eighth Amendment shown by the admissions of the parties. There may be a probability of—a continuing hazard has been shown. And there is the necessity of someone immediately going in there ... and mak[ing] a preliminary evaluation of this situation.

App. 805. On this and other occasions, however, the District Court went so far as to express his doubts whether the plaintiffs could show that defendants were anything more than "negligent" in their actions. Thus, for example, at a later hearing the Court observed:

It may be that if this all would boil down to a question of negligence on—the state being immune—this all boils down to a question of negligence on the part of the officials, of course you're barred. Well, I guess you got a pendent state claim, though, too. But then you get into questions if you can't recover under [§] 1983 claim for negligence but you could on the state claim, could you— could the Court award a fee? May have to—may end up taking a fee for future damages out of whatever you collect on—

App. 770. The District Court also said that the standard of fault of the defendants could not be determined until discovery had been completed. *See* App. 991–92, 994.

As the District Court itself has noted, to prevail on their federal Eighth Amendment claim plaintiffs will be required to prove that defendants were more than negligent, and were indeed "deliberately indifferent," to the health hazard created by the asbestos exposure. *See Whitley v. Albers,* 475 U.S. 312, 319–20, 106 S.Ct. 1078, 1084–85, 89 L.Ed.2d 251 (1986); *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). We make no determi-

nation on this question. Given the District Court's expressed ambivalence on this dispositive federal liability issue, however, it is obvious that there is a substantial likelihood that plaintiffs' federal claim could fail entirely.[2] In these circumstances, plaintiffs cannot be regarded to have prevailed as the result of any judicial determination of the "substantial rights" underlying their claim.

■ Plaintiffs also are not now entitled to attorney fees because their lawsuit acted as a "catalyst" to provoke voluntary actions by the defendants. In *Johnston v. Jago,* 691 F.2d 283, 286 (6th Cir.1982), this Court adopted a two-step analysis to resolve this question that is widely recognized:

First, in order to qualify as a "prevailing party," a plaintiff must demonstrate that his or her lawsuit was causally related to securing the relief obtained. This determination is factual.

Secondly, plaintiff must establish some minimum basis in law for the relief secured. As stated by the First Circuit:

Even if plaintiffs can establish that their suit was causally related to the defendants' actions which improved their condition, this is only half of their battle. The test they must pass is legal as well as factual. If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense.

The Court in *Nadeau* proceeded to emphasize that this legal inquiry does not entail full trial on the merits. Rather, the trial court need only consider whether the plaintiff's claim is "frivolous, unreasonable or groundless."

691 F.2d at 286 (citations omitted) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir.1978), and *Christianburg Gar-*

**2.** Plaintiffs' complaint invokes the trial court's pendent jurisdiction under unspecified "provisions of Kentucky law"; it is thus unclear whether these claims sound in strict liability, negligence, or in intentional tort. If plaintiffs prevailed on state law theories but lost on the § 1983 claim, however, they would not be entitled to attorney fees.

*ment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978)); *see Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980).

Defendants at one point in the proceedings below made an admission that plaintiffs' "lawsuit was the catalyst for . . . a lot of the action" prison officials took to abate the asbestos.[3] App. 980. Defendants' admission did not identify the *extent* of their response, however, and the District Court has made no findings of fact on this issue. There is no indication that the District Court's interim award was based on a catalyst theory. The resultant uncertainty in the record cannot support the award of fees. It appears possible that defendants' "catalyzed" response may have ended by April 25, 1986, when the first phase of emergency repairs was completed, or extended through September 1, 1986, when asbestos removal from the prison dormitories was completed, or extended even up to April 1987, when the District Court received reports that the emergency finally had been abated.

On remand, the District Court should make detailed findings of fact and conclusions of law and provide record support for any award of any attorney fees under a "prevailing party" or a *Nadeau* theory. The remainder of the fees paid to plaintiffs' counsel should be returned to the State by appropriate order of the District Court. While interim fees may be paid in some situations for reasonable monitoring of a court decree, *see Northcross v. Board of Education,* 611 F.2d 624, 637 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980), the fees must be tailored to the issues of liability on which plaintiffs have prevailed. In order to avoid confusion and allow the reviewing court to follow the District Court's reasoning concerning the issues on which the

plaintiffs have been held to have prevailed, the District Court must first make clear findings and conclusions regarding liability followed by findings regarding attorney fees. Only then can the Court of Appeals rationally review the action of a District Court on such issues.

We recognize that the District Court was confronted in this case by an uncertain and difficult situation in which it reasonably appeared that expeditious action was called for; it is not our purpose to indulge in unnecessary second-guessing or hypertechnical criticism of a busy District Judge. We do advise that, when a great deal is at stake in such uncertain circumstances, the orderly disposition of issues on appeal is greatly facilitated by a detailed record and impeded by an incomplete one.

### B. *Rule 706 Expert Costs*

Kentucky also appeals from the District Court's order requiring the State to pay for Versar's services to the Court.[4] Fed.R.Evid. 706(b) provides that an expert appointed by the Court under Rule 706(a) is:

> entitled to compensation in whatever sum the court may allow. . . . [T]he compensation shall be paid by the parties in such proportion and at such times as the court directs, and thereafter charged in like manner as other costs.

A District Court has authority to apportion costs under this rule, including excusing impecunious parties from their share. *See United States Marshals Service v. Means,* 741 F.2d 1053, 1058 (8th Cir.1984) (drafting history of Rule 706); *cf. Johnson v. Hubbard,* 698 F.2d 286 (6th Cir.) (court not required to assess government for impecunious party's witness fees), *cert. denied,* 464 U.S. 917, 104 S.Ct. 282, 78 L.Ed.2d 260 (1983).

---

**3.** The second step of the *Nadeau* test is at the moment satisfied, because the District Court has determined that there is potential merit to the constitutional claim and has not determined that defendants' conduct giving plaintiffs relief was not required by federal law. That determination awaits discovery and full adjudication.

**4.** Defendants do not appeal from those portions of the orders that appointed Versar in March 1986 and that required payment through April 25, 1986. Brief of Defendants–Appellants at 11 n. 5. They do object to the trial court's "reappointment" of Versar in May and November 1986, and to having those resultant costs imposed upon them.

The District Court, confronted with a situation in which a captive population admittedly had been exposed to a life-threatening substance, concluded that it needed "an independent view" on the asbestos-removal federal "regulations and whether they're being complied with." In the District Court's view, absent an independent monitor, it would have been necessary to close the Northpoint institution to protect the safety of the inmates. App. 967, 1051, 1058–59. In such circumstances, we think the District Court was potentially within its authority to reappoint Versar, and potentially within its authority to allocate (at least temporarily) the Rule 706(b) costs to the party against whom it granted a preliminary injunction when the parties obtaining relief were impecunious.

As in its ruling on the attorney fees, however, the District Court made no written findings of fact or conclusions of law on the Rule 706(b) costs. Given the early stage of this litigation, the previously discussed absence of any determination on the merits against the defendants, and the weight of the burden imposed upon the State, we conclude that the District Court should have made findings of fact and conclusions of law to justify its continuing employment of Versar and to underlie its imposition of these costs on the State.

### C. *Unappealable Matters*

The defendants attempt to appeal three other issues: (1) the District Court's denial of their Rule 12(b)(6) motion to dismiss; (2) a portion of an October 24, 1986 order requiring the State to pay a $350 fee for one of plaintiffs' testifying experts; and (3) an order of March 28, 1986, denying the individual defendants' motion for qualified immunity from injunctive relief and deferring a ruling on qualified immunity from damages until some discovery was undertaken. We lack appellate jurisdiction of each of these issues.

First, it is hornbook law that denial of a motion to dismiss is nonfinal and noncollateral. Second, defendants' notice of appeal on the expert fee issue, dated December 19, 1986, was filed more than 30 days after the order of October 24, 1986, mandating payment of the fee and is therefore untimely.

Finally, defendants' attempts to appeal the trial court's qualified immunity rulings by notice of appeal six months thereafter are even more untimely.[5] Although the Supreme Court has stressed the importance of defendants' rights to interlocutory appeal of denials of motions to dismiss or for summary judgment based on this ground, *see Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), our Court also has held that this right nevertheless is qualified by reasonable procedural rules, *see Kennedy v. City of Cleveland*, 797 F.2d 297, 300–01 (6th Cir. 1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987).

### IV.

In proceedings after the two notices of appeal here were filed, the District Judge advised the parties that he considered defendants' *appeal* of his order to pay Versar "frivolous" and that, assuming that this Court held against defendants on appeal, he would strongly consider imposing sanctions against them under Fed.R.Civ.P. 11. App. 1050–58. Part of the District Judge's comments on this subject were prompted by a motion to stay the pay–Versar order pending appeal, but in context it appears his remarks focused mainly on his view of the merits of the appeal. Thus, he threatened that

> I'm advising every attorney in this case, every official involved in it, that I think this appeal is frivolous. I'm advising you further that Rule 11 says that sanctions can be imposed on the attorneys and the parties alike.

---

5. We note for the guidance of the parties that, as the District Court noted, qualified immunity is ordinarily available only from damages and not from injunctive relief. *See Harlow v. Fitzgerald,* 457 U.S. 800, 819 n. 34, 102 S.Ct. 2727, 2739 n. 34, 73 L.Ed.2d 396 (1982); *Wood v. Strickland,* 420 U.S. 308, 314–15 n. 6, 95 S.Ct. 992, 997 n. 6, 43 L.Ed.2d 214 (1975).

App. 1056. Earlier, the Court threatened the State lawyers:

> And if I were all of you I'd be real careful about what you sign and file in this Court, being mindful of the strictures of Rule 11, unless you've got an extra eight or $10,000 in your bank account that you'd like to pay as a penalty if these people are delayed a year in getting their money.

App. 1053.

 Rule 11, and all other rules of the Federal Rules of Civil Procedure, "govern the procedure in the United States *district courts.*" Fed.R.Civ.P. 1 (emphasis added). The rule thus applies to "every pleading, motion, and other paper" signed and filed in the district courts, but not ordinarily to those filed in the courts of appeals. *See, e.g., Sparks v. NLRB,* 835 F.2d 705, 707 (7th Cir.1987); *Braley v. Campbell,* 832 F.2d 1504, 1510 n. 4 (10th Cir.1987). Appeals that are frivolous or are interposed for delay are sanctionable against a party by *this Court* under 28 U.S.C. § 1912 and Fed.R.App.P. 38. More serious violations of attorney conduct on appeal are sanctionable against the attorney under 28 U.S.C. § 1927. *See Jones v. Continental Corp.,* 789 F.2d 1225, 1230 (6th Cir.1986); *Braley,* 832 F.2d at 1512; *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (inherent power of court); *see generally* Martineau, *Frivolous Appeals: The Uncertain Federal Response,* 1984 Duke L.J. 845.

 We recognize that in the course of a lawsuit, the proceedings often take place in both the trial and appellate courts, and that some motions or other actions, such as the motion to stay the pay orders pending appeal,[6] may have impacts at both levels. Nevertheless, the sanction statutes, the rules, and the case law provide for fairly clear separation between conduct on appeal sanctionable by the appellate court and conduct in the trial court sanctionable by the trial court. *See, e.g., Hale v. Harney,* 786

F.2d 688, 692 (5th Cir.1986); *Limerick v. Greenwald,* 749 F.2d 97 (1st Cir.1984); *see also Anderson v. Pierce,* 815 F.2d 701 (6th Cir.1987) (unpublished). Just as it appears clear that a trial judge cannot sanction a party or lawyer for taking an appeal, we do not believe that it is proper here for the District Judge to threaten to sanction the defendants or their attorney for filing a motion to stay his order pending appeal on the grounds that the underlying appeal is frivolous. The only purpose of such threat is to prevent an appeal. Appeals of district court orders should not be deterred by threats from district judges. As must be obvious from our disposition of the issues in parts III A and III B above, we do not regard this appeal as frivolous.

### V.

In conclusion, the orders of the District Court awarding attorney fees and expert monitor costs are reversed and remanded in accordance with parts III A and III B of this opinion. The remainder of the issues appealed are dismissed for want of appellate jurisdiction. Each side will bear its own costs.

---

6. The motion to stay was denied by the District Court. A later motion filed in this Court to stay

the same order was denied March 17, 1987.