**Hazel SUTTON, Kenneth Holland, Edith Odom, and Kevin Qualls,**

v.

**Jimmy M. EVANS, John H. Burke, Jr., Jimmy P. Rice, and William T. Tucker.**

No. 3:89–0649.

United States District Court, M.D. Tennessee, Nashville Division.

March 14, 1994.

⚷13

**1194**

Walter Thomas Searcy, Frederic Eugene Cowden, Nashville, TN, for plaintiff.

Christine A. Modisher, Nashville, TN, for defendant.

## MEMORANDUM

JOHN T. NIXON, Chief Judge.

The Court is in receipt of the Magistrate's Report and Recommendation (Doc. No. 51) in the above-styled matter to which Objections have been filed. On October 24, 1991, this Court entered an Order (Doc. No. 54) adopting in part and rejecting in part the Magistrate's Report and Recommendation, thereby denying plaintiffs' Motion for Summary Judgment and granting defendants' Motion for Summary Judgment. Plaintiffs filed a Motion for Relief from the Court's October 24, 1991, Order on October 13, 1992 (Doc. No. 55). By Order entered on March 26, 1993 (Doc. No. 63), the Court granted plaintiffs' Motion for Relief, and vacated its October 24, 1991, Order. Plaintiffs filed a Brief in Response to the defendants' Objections on November 10, 1993 (Doc. No. 66), to which defendants filed a Supplemental Brief (Doc. No. 67) on December 7, 1993. In accordance with the reasoning set forth below, the Court finds some of the objections to be meritorious and modifies the Report and Recommendation as follows.

## I. BACKGROUND

Plaintiffs Hazel Sutton, Kenneth Holland, Edith Odom, and Kevin Qualls are former employees of the Tennessee Department of Transportation ["TDOT"], based at the TDOT work station in McEwen, Tennessee. On August 14, 1989, plaintiffs filed the instant action under 42 U.S.C. § 1983 for declaratory and injunctive relief against TDOT Commissioner Jimmy Evans, TDOT Regional Engineering Director John Burke, TDOT Superintendent of Civil Engineering Jimmy P. Rice, and TDOT District Maintenance Engineer William T. Tucker. Plaintiffs allege that the defendants threatened to transfer plaintiffs to work stations in other cities in retaliation for the exercise of their First Amendment rights in communicating to high-ranking state officials that defendant Tucker was violating state laws and policies in his administration of the McEwen work station.

By Order of the Court entered on August 14, 1989, a temporary restraining order was entered restraining the State from effecting the proposed transfers of plaintiffs. (Order,

Doc. No. 4, at 3.) The Magistrate Judge subsequently recommended that the District Court allow the plaintiffs to be transferred from the McEwen office due to the Magistrate's concern that disruption would otherwise occur in the McEwen office. (Report and Recommendation, Doc. No. 14, at 22.) The Magistrate recommended that plaintiffs' request for a preliminary injunction be granted, however, to the extent that defendants be required to compensate plaintiffs for the additional reasonable costs of travel, including mileage and the hours expended in travel, incident to the proposed transfer. (*Id.*)

This Court adopted the Magistrate's Report and Recommendation by Order entered on November 3, 1989 (Doc. No. 22). On November 22, 1989, defendants filed a notice of interlocutory appeal (Doc. No. 26) to the Court of Appeals for the Sixth Circuit. By Order entered on December 7, 1989, the Sixth Circuit granted a stay of this Court's November 3, 1989, Order, pending appeal, to the extent that the Order required payment of additional compensation to plaintiffs. (Order, Doc. No. 28, at 2.) On November 8, 1990, the Sixth Circuit vacated this Court's November 3, 1989, preliminary injunction Order on the grounds that the compensation required under the Order is barred by the Eleventh Amendment. (*Sutton v. Evans*, 918 F.2d 654 (6th Cir.1990).) In vacating the district court's Order, however, the Sixth Circuit noted that it "express[ed] no view as to the ultimate outcome of the litigation." (*Id.* at 658 n. 2.)

Plaintiffs Hazel Sutton and Edith Odom were transferred from the McEwen work station to the Nashville Office of the TDOT. (Aff. Sutton, Doc. No. 61, at 1–2; Aff. Odom, Doc. No. 58, at 1.) Sutton asserts that the transfer required her to drive an additional 106 miles per day. (Aff. Sutton, Doc. No. 61, at 2.) In 1990, approximately one year after being transferred, Sutton and Odom retired from state service. (Aff. Sutton, Doc. No. 61, at 2; Aff. Odom, Doc. No. 58, at 2.)

Plaintiff Kenneth Holland was transferred from the McEwen work station to the Ashland City Office of the TDOT. (Aff. Holland, Doc. No. 59, at 2.) Holland states that as a result of the transfer he was required to drive approximately 106 miles per day from his home in McEwen to his work in Ashland City, and that the drive aggravated a back condition. (*Id.*) After working in Ashland City for approximately one year, Holland informed his superiors in December, 1990, that he would be unable to perform his job due to his back condition. (*Id.*) In January, 1991, Holland advised his superiors that his physician, Dr. John C. McGinnis, had informed Holland that he could return to work. Holland asserts, furthermore, that he provided his superiors with a statement from Dr. McGinnis indicating that Holland was able to return to work. (*Id.*) According to Holland, defendant Burke informed him that he could not return to work regardless of the statement from Dr. McGinnis since Holland might reinjure his back. (*Id.*)

Plaintiff Kevin Qualls was transferred from the McEwen work station to Clarksville. (Aff. Qualls, Doc. No. 60, at 2.) Qualls states that he was required to drive approximately 109 miles per day in his vehicle, a 1979 GMC truck, in order to go to work in Clarksville. (*Id.*) Qualls left his job in Clarksville in May, 1991, approximately eighteen months after being transferred. (*Id.*) Qualls asserts that he left his job because he was unable to afford the additional commute, including the cost of repairs to his truck, and that he would not have left the TDOT if he had been permitted to remain at McEwen or had been paid a mileage allowance to cover the costs of the additional commute required by his transfer to Clarksville. (*Id.*)

On January 22, 1991, plaintiffs filed a Motion for Summary Judgment. (Doc. No. 34.) In addition, Qualls and Holland requested reinstatement to their original duty station in McEwen. (*Id.* at 1.) Defendants filed a Motion for Summary Judgment on March 15, 1991. (Doc. No. 39.)

On September 11, 1991, the Magistrate Judge issued a Report and Recommendation in which the Magistrate recommends that both plaintiffs' and defendants' respective motions for summary judgment be denied. (Report and Recommendation, Doc. No. 51, at 24.) Furthermore, although the Magistrate finds that Odom and Sutton's claims for

injunctive relief are moot because both of them have retired from state service, the Magistrate concludes that Odom and Sutton's claims are not subject to dismissal because they may be entitled to relief in the form of attorneys' fees and costs expended in the early stages of litigation if they should prevail in a declaratory judgment that defendants violated their First Amendment rights. (*Id.*)

Defendants object to the Magistrate's recommendation that summary judgment be denied on plaintiffs' claims. (Defs.' Objections, Doc. No. 52.) Defendants argue that the claims for injunctive relief by all plaintiffs are moot since none of them currently works for the TDOT. (*Id.* at 16–17.) Moreover, defendants assert that plaintiffs' claims for attorneys' fees do not create a sufficient controversy to invoke this Court's jurisdiction. (*Id.* at 17–19.) Defendants argue in the alternative that plaintiffs' speech is not entitled to protection under the First Amendment, and that the Magistrate erred in denying summary judgment on the merits. (*Id.* at 19–35.)

On October 24, 1991, this Court entered an Order adopting in part and rejecting in part the Magistrate's Report and Recommendation. (Order, Doc. No. 54.) The Court found that plaintiffs' claims had become moot, and thus denied plaintiffs' Motion for Summary Judgment and granted defendants' Motion for Summary Judgment. (*Id.* at 3.)

Plaintiffs filed a Motion for Relief from the Court's October 24, 1991, Order on October 13, 1992. (Mot. Relief, Doc. No. 55.) By Order entered on March 26, 1993, the Court granted plaintiffs' Motion for Relief, and vacated its October 24, 1991, Order to provide plaintiffs with additional time in which to respond to the defendants' Motion for Summary Judgment. (Order, Doc. No. 63, at 1.)

Plaintiffs filed a Brief in Response to the defendants' Objections to the Report and Recommendation on November 10, 1993. (Pls.' Br. Resp., Doc. No. 66.) Plaintiffs concede that Odom and Sutton's claims for injunctive relief have become moot due to their respective retirements, but plaintiffs argue that Odom and Sutton's claims for attorneys' fees survive. (*Id.* at 2, 5–7.) Moreover, plaintiffs argue that Holland and Qualls' claims for injunctive relief are not moot because both seek reinstatement to their former positions. (*Id.* at 2–5.) Plaintiffs request that the Court deny defendants' Motion for Summary Judgment with respect to Holland and Qualls' claims, and that the Court reserve its decision on all of the plaintiffs' claims for attorneys' fees until this action is tried. (*Id.* at 8.)

On December 7, 1993, defendants filed a Supplemental Brief in Support of their Objections. (Defs.' Supp.Br., Doc. No. 67.) Defendants argue that Odom and Sutton's requests for attorneys' fees must be dismissed because they did not prevail on their claims against defendants and their requests for fees do not of themselves constitute a live controversy. (*Id.* at 11–13.) Defendants contend that Holland and Qualls' claims for injunctive relief are moot, that reinstatement is impermissible under the Eleventh Amendment, and that their requests for attorneys' fees accordingly should be denied. (*Id.* at 5–11.) Alternatively, defendants urge the Court to grant summary judgment against plaintiffs. (*Id.* at 13–14.)

## II. ANALYSIS

### A. *Whether Plaintiffs' Claims Are Moot and/or Are Barred Under The Eleventh Amendment*

#### 1. *Mootness*

It is well-established that under Article III of the United States Constitution, a federal court may only adjudicate actual, ongoing controversies. *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to a defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). A dispute between the parties which was very much alive at the time the suit was filed, but which no longer presents a live concern, cannot substitute for the actual case or controversy that an exercise of this Court's jur-

isdiction requires. *Honig,* 484 U.S. at 317, 108 S.Ct. at 601.

In the instant action, the Court finds that Holland and Qualls' claims for injunctive relief still present a live concern, and satisfy the case or controversy requirement under Article III. By contrast, Odom and Sutton have conceded that their claims for injunctive relief are now moot. Odom and Sutton argue, however, that a live case or controversy still exists because they are requesting attorneys' fees and costs.

■ While an interest in attorneys' fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim, *Lewis,* 494 U.S. at 480, 110 S.Ct. at 1255; *Brock v. International Union, UAW,* 889 F.2d 685, 695 (6th Cir. 1989), *reh'g denied* (6th Cir. Feb. 21, 1990), the expiration of the underlying claim does not moot a controversy over attorneys' fees already incurred. *Bliss v. Holmes,* 867 F.2d 256, 258 (6th Cir.1988). *See also Dahlem v. Board of Educ. of Denver Pub. Sch.,* 901 F.2d 1508, 1511 (10th Cir.1990); *United States v. Ford,* 650 F.2d 1141, 1143–44 (9th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982). Where a controversy over attorneys' fees exists, however, a fee award is nevertheless impermissible "until the plaintiff has crossed the statutory threshold of prevailing party status." *Dahlem,* 901 F.2d at 1511 (citation omitted).

■ In order to qualify as a prevailing party, a plaintiff must obtain preliminary relief which represents "an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff." *Webster v. Sowders,* 846 F.2d 1032, 1036 (6th Cir.1988). While the grant of preliminary injunctive relief is thus sufficient as a general rule to qualify a plaintiff as a prevailing party, *see, e.g. Bliss,* 867 F.2d 256; *Dahlem,* 901 F.2d 1508, the grant of a temporary restraining order is merely indicative of a "procedural" success and will not qualify a plaintiff for attorneys' fees. *Webster,* 846 F.2d at 1036.

■ It is undisputed that Odom and Sutton's underlying claims have become moot and do not satisfy the Article III case or controversy requirement. The Court finds, moreover, that Odom and Sutton have failed to demonstrate that they are prevailing parties to this lawsuit. While the Court granted plaintiffs' request for a temporary restraining order by Order entered on August 15, 1989, *see* Doc. No. 4, the Sixth Circuit vacated the Court's November 3, 1989, preliminary injunction Order which required the payment of compensation to plaintiffs for expenses incident to their respective transfers. *See* Order, Doc. No. 14; *Sutton v. Evans,* 918 F.2d 654 (6th Cir.1990). Because Odom and Sutton have failed to obtain preliminary relief which represents an unambiguous indication of probable success on the merits, they do not qualify for attorney' fees incurred. Accordingly, Odom and Sutton's requests for attorneys' fees must be dismissed from this action because such requests are not sufficient to satisfy the Article III case or controversy requirement.

### 2. *Eleventh Amendment*

■ Defendants assert that even if Holland and Qualls' claims for injunctive relief in the form of reinstatement satisfy the Article III case or controversy requirement, the relief sought by Holland and Qualls is barred by the Eleventh Amendment to the United States Constitution.

■ The Eleventh Amendment prohibits a federal court from exercising jurisdiction over suits brought by private parties against a state or state agency unless the state has by the most express language consented to be sued, or Congress has clearly indicated its decision to abrogate Eleventh Amendment immunity for the type of claim brought. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–1361, 39 L.Ed.2d 662 (1974), *reh'g denied,* 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974). This prohibition remains in effect when state officials are sued in their official capacity for monetary damages. *Kentucky v. Graham,* 473 U.S. 159,

169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). The Eleventh Amendment is inapplicable when state officials are sued in their official capacity for prospective relief, however, because such a suit is not considered a suit against the State. *Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14; *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909; *Ex Parte Young,* 209 U.S. 123, 167, 28 S.Ct. 441, 457, 52 L.Ed. 714 (1908).

█ In the instant action, Holland and Qualls are suing state officials in their official capacity pursuant to 42 U.S.C. § 1983 for injunctive relief in the form of reinstatement, as well as for attorneys' fees. It is well-settled that Congress intended to abrogate Eleventh Amendment immunity and authorize fee awards payable by the States when their officials are sued in their official capacity for violations under § 1983. *See Hutto v. Finney,* 437 U.S. 678, 693–95, 98 S.Ct. 2565, 2575–76, 57 L.Ed.2d 522 (1978), *reh'g denied,* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979); *Quern,* 440 U.S. at 344–45, 99 S.Ct. at 1147. The Court finds, moreover, that reinstatement is a form of prospective injunctive relief which is not barred by the Eleventh Amendment.[1] *See, e.g. Lassiter v. Alabama A & M Univ.,* 3 F.3d 1482, 1485 (11th Cir.1993); *Melo v. Hafer,* 912 F.2d 628, 635 (3d Cir.1990), *aff'd,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Kashani v. Purdue Univ.,* 813 F.2d 843, 848 (7th Cir. 1987), *cert. denied,* 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987); *Dwyer v. Regan,* 777 F.2d 825, 836 (2d Cir.1985), *modified on other grounds, reh'g denied,* 793 F.2d 457 (2d Cir.1986); *Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299 (6th Cir.1984), *cert. denied,* 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985).

Accordingly, the Court rejects defendants' argument that Holland and Qualls' claims for reinstatement and attorneys' fees be dismissed as barred under the Eleventh Amendment.

**B.** *Whether Summary Judgment Should Be Granted Against Plaintiffs' First Amendment Claims*

Defendants urge the Court to reject the recommendation of the Magistrate Judge in the September 11, 1991, Report and Recommendation, and grant their Motion for Summary Judgment.

*1. Standard of review*

Rule 56(c) of the Federal Rules of Civil Procedure provides in part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Advisory Committee for the Federal Rules has noted that "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed.1990).

An alleged factual dispute existing between the parties is not sufficient to defeat a properly supported summary judgment motion; there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law involved in the case will underscore which facts are material and only disputes over outcome determinative facts will bar a grant of summary judgment. *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510.

While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim, particularly when that party has had an opportunity to conduct discovery. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is true,

---

**1.** The Court notes that defendants repeatedly assert in their Supplemental Brief filed with the Court that "the Eleventh Amendment bars reinstatement," *see* Doc. No. 67, at 6, 10, 11, and 14, and instructs defendants to exercise caution in examining the underlying law before making such erroneous assertions.

however, that "[i]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated." *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962) (citations omitted).

To determine if a summary judgment motion should be granted, the court should use the standard it would apply to a motion for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The court must determine that a reasonable jury would be unable to return a verdict for the non-moving party in order to enter summary judgment. *Id.*, 477 U.S. at 249, 106 S.Ct. at 2511. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989) (citations omitted).

### 2. *Plaintiffs' Free Speech Claim*

Plaintiffs allege that they were transferred in retaliation for exercising their First Amendment rights. Because the Court has determined that Odom and Sutton's claims must be dismissed, the Court addresses defendants' motion for summary judgment only with respect to the claims of the remaining plaintiffs, Holland and Qualls.

■ In order to establish a free speech claim, a public employee must establish two elements: (1) that as a matter of law, the employee's speech was constitutionally protected; and (2) that, as an issue of fact, the protected speech was a substantial and motivating factor in an adverse employment decision against the employee. *Langford v. Lane*, 921 F.2d 677, 680 (6th Cir.1991) (citing *Connick v. Myers*, 461 U.S. 138, 146–54, 103 S.Ct. 1684, 1689–94, 75 L.Ed.2d 708 (1983)), *reh'g denied* (6th Cir. Feb. 25, 1991); *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). If the employee is able to establish a prima facie case, the burden shifts to the defendant

employer "to show by a preponderance of the evidence that it would have taken the same action even in the absence of the protected conduct." *Langford*, 921 F.2d at 680.

#### a. *Was plaintiffs' speech constitutionally protected?*

■ A public employee's speech is constitutionally protected where it addresses matters of public concern, as determined by the content, form, and context of the given statement. *Connick*, 461 U.S. at 146–48, 103 S.Ct. at 1690–91; *Langford*, 921 F.2d at 680. Moreover, the employee's interest in the speech "must outweigh the interests of the State, as an employer, in promoting the efficiency of the public service it performs through its employees." *Langford*, 921 F.2d at 680 (citations omitted).

■ In the instant case, the Court finds well-reasoned and adopts the Magistrate Judge's finding that plaintiffs' speech alleging "payroll padding" and the falsification of employee time or leave records addresses a matter of public concern. *See* Report and Recommendation, Doc. No. 51, at 19–21. Given the Court's finding that Holland and Qualls' speech involved a matter of public concern, the next step in the constitutional inquiry is to determine whether in the balance of interests Holland and Qualls' interest in criticizing certain alleged practices at their workplace outweighed their employer's interest in promoting the efficiency of the public services the TDOT performs through TDOT employees. *Langford*, 921 F.2d at 681 (citing *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987), *reh'g denied*, 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 819 (1987)).

Factors involved in determining the balance of interests include the manner, time, and place of the employee's expression and the context in which the dispute arose, as well as whether the expression "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular opera-

tion of the enterprise." *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899. *See also Langford,* 921 F.2d at 681 (citing *Barnes v. McDowell,* 848 F.2d 725, 733 n. 9 (6th Cir.1988), *reh'g denied,* (6th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 780 (1989)).

Upon reviewing the record for the above-referenced factors, the Court adopts the Magistrate's finding that the manner in which plaintiffs expressed their concern, by letter to a high-ranking official, "does not appear an impertinent or improper method of expression." Report and Recommendation, Doc. No. 51, at 22. In addition, the Court finds no evidence at this time that any detrimental impact which resulted from Holland and Qualls' expression implicated close working relationships for which personal loyalty and confidence are necessary. *See Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899. Although it is evident that plaintiffs' letter contained several allegations which ultimately proved false, the Court is unable to conclude from the record that plaintiffs made such allegations in bad faith.

The Court finds that the balance of interests is in favor of Holland and Qualls at this juncture [2], and that Holland and Qualls have satisfied the first element of their prima facie case by establishing that their speech is constitutionally protected.

b. *Was plaintiffs' speech a substantial and motivating factor in the adverse employment action against plaintiffs?*

■ The second element which Holland and Qualls must establish in their prima facie case is that the protected speech at issue was a substantial and motivating factor in their alleged retaliatory transfers. *See Langford,* 921 F.2d at 680. Drawing all reasonable inferences in favor of the non-moving party, as the Court is required to do in determining a motion for summary judgment, the Court concludes that a reasonable jury could find that Holland and Qualls' speech motivated their transfers from the McEwen work site. In addition, assuming that plaintiffs speech was a substantial and motivating factor in their transfers, defendants have failed to meet their burden of establishing by a preponderance of the evidence that they would have transferred plaintiffs even in the absence of the protected conduct. *Id.* at 680. Accordingly, summary judgment against plaintiffs is denied.

## III. CONCLUSION

Because the Court finds some of defendants' objections to be meritorious, the Court adopts the Magistrate's Report and Recommendation as modified herein. Accordingly, the Court denies plaintiffs' Motion for Summary Judgment (Doc. No. 34); grants in part and denies in part defendants' Motion for Summary Judgment (Doc. No. 39), denying summary judgment on Kenneth Holland and Kevin Qualls' claims, and granting summary judgment on the grounds of mootness on Hazel Sutton and Edith Odom's claims; and dismisses Sutton and Odom's claims from this action.

An order consistent with the findings herein is filed contemporaneously.

## *ORDER*

The Court is in receipt of the Magistrate's Report and Recommendation (Doc. No. 51) in the above-styled matter to which Objections have been filed. On October 24, 1991, this Court entered an Order (Doc. No. 54) adopting in part and rejecting in part the Magistrate's Report and Recommendation, thereby denying plaintiffs' Motion for Summary Judgment and granting defendants' Motion for Summary Judgment. Plaintiffs filed a Motion for Relief from the Court's October 24, 1991, Order on October 13, 1992 (Doc. No. 55). By Order entered on March 26, 1993 (Doc. No. 63), the Court granted plaintiffs' Motion for Relief, and vacated its October 24, 1991, Order. Plaintiffs filed a Brief in Response to the defendants' Objections on November 10, 1993 (Doc. No. 66), to which defendants filed a Supplemental Brief (Doc. No. 67) on December 7, 1993.

Consistent with the contemporaneously-filed Memorandum, the Court hereby MODIFIES the Magistrate's Report and Recom-

---

**2.** The Court recognizes that its decision with respect to the balance of interests may change upon hearing plaintiffs' proof and evaluating the credibility of witnesses at trial.

mendation. Accordingly, the Court DE-NIES plaintiffs' Motion for Summary Judgment (Doc. No. 34); GRANTS IN PART and DENIES IN PART defendants' Motion for Summary Judgment (Doc. No. 39), DENYING summary judgment on Kenneth Holland and Kevin Qualls' claims, and GRANTING summary judgment on the grounds of mootness on Hazel Sutton and Edith Odom's claims; and DISMISSES Sutton and Odom's claims from this action.