COALITION FOR BASIC HUMAN
NEEDS, et al., Plaintiffs,
Appellants,

v.

Edward J. KING, et al., Defendants,
Appellees.

No. 82–1359.

United States Court of Appeals,
First Circuit.

Argued Sept. 9, 1982.

Decided Nov. 1, 1982.

Ernest Winsor, Boston, Mass., for appellants.

Carl Valvo, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for appellees.

Before COFFIN, Chief Judge, SWYGERT,[*] Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

During the summer of 1981, a budget impasse in the Massachusetts legislature cut off funding to state welfare recipients under the Aid to Families with Dependent Children (AFDC) and state General Relief (GR) programs. The appellants in this case, who will be referred to collectively as "the Coalition," brought suit in federal district court to compel the appellees, including Governor King and other state officials, to resume AFDC and GR payments. Following the district court's denial of a motion

[*] Of the Seventh Circuit, sitting by designation.

for a temporary restraining order, this court granted the Coalition an injunction pending appeal that required the appellees to resume AFDC payments. Before the injunction took effect, however, the legislature passed a full budget that mooted the controversy. The Coalition now appeals a decision by the district court denying attorney's fees to the Coalition for its work in the 1981 litigation on the ground that the Coalition was not a "prevailing party" within the meaning of the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, which provides in relevant part:

> In any action or proceeding to enforce a provision of [42 U.S.C.] sections 1981, 1982, 1983, 1985, and 1986 . . ., title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

We vacate the first paragraph of the order of the district court and remand for an award of attorney's fees and costs.

## I

The details of the 1981 Massachusetts budget crisis and the ensuing litigation between the Coalition and the appellees are set out in the opinion of the district court denying fees. *See Coalition for Basic Human Needs v. King,* 535 F.Supp. 126 (D.Mass.1982). In brief, the governor and the legislature proved unable to agree on a new budget before the previous fiscal year's authorization expired at midnight on June 30, 1981. As a result, the state stopped making payments under the AFDC and GR programs and stopped issuing pensions and salaries to state employees. On July 1, the Coalition filed suit, seeking preliminary and permanent injunctive relief to compel the appellees to resume the AFDC and GR payments. The Coalition claimed that the failure to make the payments or to provide advance notice of their termination conflicted with provisions of the Social Security Act and with the due process clauses of the Fifth and Fourteenth Amendments to the Constitution.

On July 2, the district court denied the Coalition's motion for a temporary restraining order, as well as an alternative request that the court order the governor to exercise his exclusive power to commence interim budget proceedings. On the same day, the governor submitted to the legislature the first in what would prove to be a series of proposed interim funding measures covering AFDC and GR payments as well as other emergency expenditures. The bill was approved by the state House of Representatives but was effectively killed by the state Senate.

On July 7, the Coalition appealed the district court's denial of its motion for a temporary restraining order to this court. Pursuant to Fed.R.App.P. 8(a), the Coalition requested that this court issue an injunction pending appeal ordering the appellees to resume AFDC and GR payments. At 6:00 p.m. on July 13, this court granted in part the motion for injunction pending appeal. *Coalition for Basic Human Needs v. King,* 654 F.2d 838 (1st Cir. 1981). The court not only found that "irreparability of harm is now excruciatingly obvious," *id.* at 840–41, but concluded that the Coalition had demonstrated a probability of success on the merits of its claim that the interruption of the AFDC payments violated provisions of the Social Security Act. *Id.* at 841–42. The court accordingly ordered the appellees "to take all steps that may be necessary to ensure that the second semi-monthly checks of July will issue promptly and on schedule to all AFDC recipients." *Id.* at 843. The July 13 order was to take effect three days later, on July 16.

In the twelve days between the filing of the Coalition's suit and this court's issuance of the injunction pending appeal, the governor had submitted four interim budget bills without success. Within six hours of the July 13 order, however, the governor submitted and both houses of the legislature approved a two-week retroactive funding bill covering AFDC and GR payments as well as other expenditures. As a result, the appellees returned to this court on July 15, seeking to have the July 13 order modified

or vacated. This court did modify the July 13 order, but only to the limited extent of postponing the effective date of the injunction from July 16 to July 23. Five days later, on July 20, the governor and legislature approved a full budget that mooted the Coalition's suit before the injunction took effect.

Following these events, the Coalition submitted a request for the award of costs and attorney's fees under 42 U.S.C. § 1988, which provides in relevant part that a court may allow the "prevailing party" in an action under 42 U.S.C. § 1983 to recover reasonable attorney's fees. The Coalition relied principally on this court's opinion in *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir. 1978). *Nadeau* addressed two central issues: 1) under what circumstances could a party recover attorney's fees for obtaining judicial relief on some but not all of his claims; and 2) under what circumstances could a party recover fees when his suit does not result in a formal judgment in his favor but prompts actions outside the courtroom that afford the relief sought by the suit. With respect to the first issue, *Nadeau* held that plaintiffs are to be considered "prevailing parties" if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." 581 F.2d at 278–79. With respect to the second issue, *Nadeau* set forth a two-pronged test. A plaintiff constitutes a "prevailing party" under *Nadeau,* even if he obtained relief from outside the courtroom rather than within, provided that: 1) as a matter of fact, his suit was a "necessary and important factor in achieving the improvements"; and 2) as a matter of law, the suit was not " 'frivolous, unreasonable, or groundless.' " *Id.* at 281 (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)). This may be referred to as the "catalyst" theory.

The Coalition argued below, and argues here on appeal, that it was entitled to attorney's fees as a "prevailing party" under each of the two theories set forth in *Nadeau.* It first argued that by obtaining preliminary injunctive relief from this court, it "succeed[ed] on [a] significant issue in litigation which achieve[d] some of the benefit" that the Coalition had sought. It added that in any event, its suit was not "frivolous, unreasonable, or groundless" and that the preliminary injunction it obtained had *caused* the governor to submit the interim budget that finally provided AFDC and GR funding on July 13; thus, it argued, it satisfied *Nadeau 's* "catalyst" test.

The district court rejected the Coalition's fee request. It found that the total amount of costs and fees requested by the Coalition was reasonable, and it agreed that the Coalition's claims were not "frivolous, unreasonable, or groundless." But it found that the litigation was not a "necessary factor" in the executive and legislative actions that provided AFDC and GR funding. This lack of a causal connection between the Coalition's suit and the effective delivery of relief, in the court's view, disqualified the Coalition from attorney's fees. We question the district court's parsing of "necessary and important" into separate requirements of necessity and importance, but we need not resolve now how strong a causal showing is required under *Nadeau,* for even accepting the district court's finding of no causal connection, we do not agree with the legal conclusion it drew from that finding.

## II

At the outset we should make clear that *Nadeau 's* two tests are separate and distinct; satisfying either of them is sufficient to qualify a party as "prevailing." The first test states the obvious, namely, that a party has prevailed if it wins the litigation. The only reason that the "prevailing party" status of the plaintiff was not obvious in *Nadeau* was because the question there concerned a party who prevailed as to *some,* but not *all,* of his claims. It was with this question in mind that the court wrote that plaintiffs are "prevailing" if "they succeed *on any significant issue* in litigation which achieves some of the benefit the parties sought in bringing suit." 581 F.2d at 278–79 (emphasis added). The

second test—the "catalyst" test—concerned the more difficult question presented by parties that do not win on any significant issue in court but obtain what they seek anyway. The court's practical answer was that, as long as the suit is not "frivolous, unreasonable, or groundless," the party is "prevailing" if the suit is a "necessary and important factor" in achieving what was sought. Given our resolution of the issue, we are here concerned only with the first test: Did the Coalition achieve a sufficient judicial victory?

The Coalition's first problem arises out of a phrase used in *Nadeau* to describe the kind of judicial success that would qualify a plaintiff as a "prevailing party." This court spoke of succeeding "on any significant issue in the litigation *which achieves some of the benefit* the parties sought in bringing suit" (emphasis added). One might argue that the Coalition's success achieved none of the benefits of the suit because the benefits received were due to an independent supervening cause. A moment's thought, however, is sufficient to demonstrate that the italicized language should not, and does not, determine the outcome here. The requirement that the legal success "achieve some of the benefit the parties sought" merely distinguishes cases in which plaintiffs obtain some substantive relief from those in which the "victories" are purely procedural. *Compare Nadeau* (fees awarded when plaintiffs obtain order expanding prisoner access to library facilities) *with Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) *(per curiam )* (no fees when Court of Appeals vacates directed verdict and remands for trial); *Swietlowich v. County of Bucks,* 620 F.2d 33 (3d Cir. 1980) (no fees when Court of Appeals vacates verdict for defendants because of erroneous jury instructions and remands for new trial); *and Bly v. McLeod,* 605 F.2d 134 (4th Cir. 1979) (no fees when Court of Appeals vacates dismissal and remands for clarification, or when plaintiffs obtain convening of three-judge district court), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980).

■ In *Nadeau* we had in mind the typical case in which a party wins: winning provides a legal right to the relief sought, and it ordinarily means the winner will receive the relief. A win in the form of a final judgment that does not lead to the benefit sought is unusual. Of course, an intervening event may have made it unnecessary or impossible for the defendant to deliver that to which the plaintiff is legally entitled. The plaintiff may have won the right to readmission to a particular school, for example, but the school may burn down or the plaintiff may die. Alternatively, the school board might have readmitted the plaintiff after entry of final judgment for a totally independent reason, demonstrably unrelated to the law suit. But there is no reason why these sorts of fortuitous occurrences ought, in and of themselves, to deprive lawyers who win a civil rights suit of the fees to which they would otherwise be entitled. In ordinary English usage they have still "prevailed" in the case. No statutory purpose would be served by turning an award of fees upon the presence or absence of such fortuitous postjudgment circumstances. We are reinforced in this view by the language of the Supreme Court in *Hanrahan, supra.* The Court stated that Congress authorized awards "to a party who has established his *entitlement* to some relief on the merits of his claim." 446 U.S. at 757, 100 S.Ct. at 1989 (emphasis added). A party, in other words, prevails in a law suit when he establishes a legal *entitlement* to what he seeks, not when what he seeks is actually delivered. *Cf. Knighton v. Watkins,* 616 F.2d 795, 799 (5th Cir. 1980) ("Even where the victory is only the vindication of the correctness of the plaintiff's position and, therefore, may be characterized as moral vindication, counsel's fees may be awarded."); *Rainey v. Jackson State College,* 551 F.2d 672, 676–77 (5th Cir. 1977).

The more difficult question in this case is whether the Coalition established a legal "entitlement." It did not obtain a final judgment or even a preliminary injunction. It sought, and was denied, a temporary restraining order and obtained only an in-

junction pending appeal. Ordinarily, such preliminary relief might not be considered a win on the merits. *See Hanrahan, supra.* But this is an unusual case.

For one thing, the Coalition's principal object was very temporary and provisional relief. No one doubted that Massachusetts would end up with a budget. No one doubted that the state's welfare clients would receive their aid checks in the long run. However, the Coalition acted on the theory that, in the words of Harry Hopkins, "people don't eat in the long run—they eat every day." And the Coalition's primary object was preliminary relief that would tide the recipients over until the budget was passed and regular checks once more arrived. This is precisely the legal entitlement that they received.

For another thing, this court was fully aware of the fact that, as a practical matter, its decision on the injunction pending appeal was a "final" decision—that it would require the state to release millions of dollars to welfare recipients before the legislature passed a final budget. And, this court made its decision only after careful consideration of the Coalition's legal claims. While the decision that the Coalition was "likely to succeed" on its statutory claim has, for precedential purposes, only the weight of a preliminary determination, this court made that decision with full awareness that, given the press of time, it was most unlikely there would ever be a different legal outcome in the particular case. For these reasons taken together, we consider our preliminary order to have been—for fees purposes—close to a final judgment.

Of course, it may be argued that obtaining relief that is called "preliminary" never warrants the award of attorney's fees. *See Smith v. University of North Carolina,* 632 F.2d 316, 347 (4th Cir. 1980); *Oshiver v. Philadelphia Court of Common Pleas,* 497 F.Supp. 416, 418 (E.D.Pa.1980). But we do not believe the law requires us to interpret the word "prevailing" in so purely formal a manner. To the contrary, the Supreme Court in *Hanrahan, supra,* referring to the legislative history of the Civil Rights Attorney's Fees Awards Act, noted that "a person may in some circumstances be a 'prevailing party' without having obtained a favorable 'final judgment following a full trial on the merits,' " that Congress intended to permit such an award to one "who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal," and that the basic question was whether there had been entry of an order "that determines the substantial rights of the parties." 446 U.S. at 756–58, 100 S.Ct. at 1988–89. While further proceedings in this case were theoretically possible—certiorari from our order had been sought—as a practical matter such proceedings here or elsewhere were unlikely. Thus, in the context of this case, we believe that the Coalition has established its "entitlement to some relief on the merits . . . on appeal" by obtaining an injunction pending appeal that effectively determined the parties' rights.

The circumstances set forth above make this case different from those in which courts have denied attorneys' fees to parties who have won interlocutory victories. *See Hanrahan, supra; Smith, supra* (construing parallel provision of 1964 Civil Rights Act); *Bly, supra; Parks v. Grayton Park Association,* 531 F.Supp. 77 (E.D.Mich.1982); *Davis v. City of Ennis,* 520 F.Supp. 262 (N.D.Tex. 1981) (three-judge court); *Oshiver, supra.* In all these "denial" cases, the "interlocutory" victory is far more distant from substantive relief on the merits than in the case before us. In some of them, the interlocutory "victory" was purely procedural rather than substantive; in others the preliminary relief, although substantive, did not determine the merits of the plaintiffs' claim and provide affirmative relief, but only maintained the status quo without purporting to address the merits; in still others, further litigation on the merits remained to be conducted or had been conducted to the ultimate detriment of the plaintiffs. In *Hanrahan,* for example, the Supreme Court reversed a fee award to the plaintiffs whose only accomplishment had been to persuade the Court of Appeals to

reverse a district court's directed verdict and remand the case for trial. In *Bly* (which strikes us as the appellees' strongest support) the district court had granted the plaintiffs a temporary restraining order, but the Court of Appeals stressed that the order "was in no way a determination on the merits and merely preserved the status quo." 605 F.2d at 137. *See also Davis,* 520 F.Supp. at 266 (parties enter pretrial stipulation maintaining status quo, but district court makes no adjudication about merits of claim and stipulation does no more than "mitigat[e] Davis' asserted injury pending final resolution of his claim"). In *Smith* the plaintiffs obtained a preliminary injunction from the district court, but lost their suit at trial. *See also Parks,* 531 F.Supp. at 78 (same); *Oshiver,* 497 F.Supp. at 417 (plaintiff seeks fees after obtaining reinstatement *pendente lite* but before pending trial has taken place).

The case before us, however, is similar to those in which courts have granted fees for interlocutory success. Thus, in *Williams v. Alioto,* 625 F.2d 845 (9th Cir. 1980) (*per curiam*), *cert. denied,* 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981), the district court preliminarily enjoined certain police stop-and-frisk procedures following "a judicial determination that [the police] had acted unconstitutionally." 625 F.2d at 847–48. Before the police could complete an appeal of the injunction, the criminals whose acts had triggered the police practices were arrested and the practices were abandoned, mooting the case. The Court of Appeals nevertheless affirmed the district court's fee award based on the preliminary relief. *Id.* at 847–48. In our case, the interlocutory decision was made by an appellate court—a fact that makes the award of fees still more appropriate. *Cf. Alioto v. Williams,* 450 U.S. 1012, 1013, 101 S.Ct. 1723, 1724, 68 L.Ed.2d 213 (1981) (Rehnquist, J., dissenting from denial of certiorari). Similarly, in *Doe v. Marshall,* 622 F.2d 118 (5th Cir. 1980), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981), the district court granted a preliminary injunction requiring an athletic association to let the plaintiff play high school football, after the court determined that the plaintiff had shown a probability of success on the merits; the plaintiff mooted the case by graduating before further proceedings on the merits were held, but the Court of Appeals approved an attorney's fee award to the plaintiff. 622 F.2d at 119–20. Other cases have awarded attorney's fees to plaintiffs for more tenuous preliminary relief, see, e.g., *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328 (5th Cir. 1981); *Oldham v. Ehrlich,* 617 F.2d 163 (8th Cir. 1980), but we do not rely upon them because they may not be consistent with *Hanrahan.*

### III

We turn finally to appellees' claim that this court should in its "discretion" withhold attorney's fees, presumably because special circumstances render the award "unjust." *See David v. Travisono,* 621 F.2d 464, 468 (1st Cir. 1980) (*per curiam*); *accord, Crosby v. Bowling,* 683 F.2d 1068, 1072 (7th Cir. 1982); *Williams v. Miller,* 620 F.2d 199, 202 (8th Cir. 1980) (*per curiam*). They base their claim on the fact that state law required them—under threat of criminal penalties—to deny the Coalition the grant money it sought in the absence of a state budget.

If the appellees mean this fact to show that they acted in good faith—that they felt obliged to withhold the funds and obliged to contest the Coalition's suit—we agree that they may have had good-faith reasons for their acts, but that is no reason to deny the Coalition attorney's fees. The Civil Rights Attorney's Fees Awards Act is not meant as a "punishment" for "bad" defendants who resist plaintiffs' claims in bad faith. Rather, it is meant to compensate civil rights attorneys who bring civil rights cases and win them. The need for such law suits, and such payment, may well be greatest in just those instances in which lawyers and officials, in totally good faith, have opposing views about what state and federal law requires of them. *Cf. Johnson v. Mississippi,* 606 F.2d 635, 637 (5th Cir. 1979) (district court did not abuse discretion in awarding attorney's fees against state defendants whose conduct "was required by the Mississippi Legislature"). Moreover, if

appellees mean that it is unfair to hold them personally responsible for what state law required of them, we note that they have failed to show any way in which our holding would affect them personally. They do not claim that they must personally pay the legal fees at issue. And, in light of the Massachusetts indemnification statute, Mass.Gen.Laws Ann. ch. 258, § 9 (West Supp. 1982–83), it seems likely that the ultimate burden of paying for the fees lies with the state, not with the appellees.

In sum, the Coalition and the other appellants are "prevailing parties" under § 1988 and are entitled to an award of attorney's fees. The district court already has held that the total amount of costs and fees requested is reasonable. The order denying costs and fees is vacated and the case remanded for an appropriate award. The Coalition is also entitled to reasonable costs and attorney's fees incurred in bringing this successful appeal. *See Southeast Legal Defense Group v. Adams,* 657 F.2d 1118, 1126 (9th Cir. 1981); *accord, Lund v. Affleck,* 587 F.2d 75 (1st Cir. 1978).

*Vacated in part and remanded for an award of attorney's fees and costs.*