**Lyndon H. LaROUCHE, Jr., Eugene McCarthy, Kevin Irwin, Virginia Irwin, Anthony Longo, Jabir Jawwaad, Timothy B. Brown, Laurence P. Nadel, Hope Crescione, Plaintiffs–Appellees,**

v.

**Pauline R. KEZER, In her official capacity as Secretary of State, State of Connecticut, Defendant–Appellant.**

No. 899, Docket 93–7875.

United States Court of Appeals,
Second Circuit.

Argued Jan. 12, 1994.

Decided March 29, 1994.

Aaron S. Bayer, Deputy Atty. Gen. for the State of CT, Hartford, CT (Richard Blumenthal, Atty. Gen., Jane S. Scholl, Associate Atty. Gen., Jane R. Rosenberg, Asst. Atty. Gen., Hartford, CT, of counsel), for defendant-appellant.

Jonel Newman, Hartford, CT (Martha Stone, Connecticut Civil Liberties Union Foundation, Hartford, CT; Martin B. Margulies, University of Bridgeport School of Law, Bridgeport, CT, of counsel), for plaintiffs-appellees.

Before: MINER and MAHONEY, Circuit Judges, and RESTANI, Court of International Trade Judge.[*]

RESTANI, Judge:

The question presented is whether civil rights plaintiffs who lose their appeal on the merits may nevertheless "prevail" for the purposes of an award of attorney's fees, if they succeed in obtaining a stay and injunction pending appeal. We hold that such plaintiffs are not prevailing parties. Therefore, we reverse the district court's award of attorney's fees under 42 U.S.C. § 1988 (Supp. III 1991).

## BACKGROUND

Plaintiffs-appellees Lyndon H. LaRouche, Jr. and Eugene McCarthy ("appellees") have both long sought to be elected to the presidency of the United States. McCarthy launched his first presidential campaign for

[*] Hon. Jane A. Restani of the United States Court of International Trade, sitting by designation.

the 1968 election, while LaRouche has been a candidate since 1976. In late 1991, defendant-appellant Pauline Kezer, the Secretary of State for the State of Connecticut ("the Secretary"), informed appellees of the procedures available for those seeking placement on the ballot for Connecticut's 1992 presidential primary. Although both appellees indicated their interest, they were not included on the candidate list announced by the Secretary on January 24, 1992.

The list incorporated the names of all candidates whom the Secretary considered to be "generally and seriously advocated or recognized according to reports in the national or state news media" pursuant to the so-called "media recognition" statute. Conn.Gen.Stat. § 9–465(a) (1989). A person rejected under the media recognition provision may participate in the primary by collecting the signatures of one percent of his party's registered voters within fourteen days after being initially rejected. *See id.* §§ 9–465(b), 9–467 to 9–469 (1989). Appellees declined to pursue this "petition alternative."

Instead, on February 6, 1992, LaRouche, McCarthy, and several of their Connecticut supporters filed a complaint against the Secretary in the United States District Court for the District of Connecticut. The complaint alleged, *inter alia,* 1) the unconstitutionality of the media recognition statute; 2) the unconstitutionality of the petition alternative; and 3) the unconstitutionality of the media recognition statute as applied to appellees.[1]

The district court entered its decision on March 3, 1992, finding the media recognition statute to be unconstitutionally vague, but holding that the petition alternative provided appellees with a constitutionally valid means of ballot access. *LaRouche v. Kezer,* 787 F.Supp. 298, 304–05 (D.Conn.1992), *aff'd in part & rev'd in part,* 990 F.2d 36 (2d Cir. 1993). The district court concluded that appellees

> had a means available to them which was not constitutionally infirm. Thus, they are not entitled to the relief requested, includ-

ing specifically the request that the Secretary be ordered to place their names on the democratic ballot. Accordingly, judgment shall enter for defendant.

*Id.* at 305. The court did not rule on appellees' "as applied" challenge to the media recognition statute because the finding that the statute was void for vagueness rendered the "as applied" challenge moot. *Id.*

Appellees filed an appeal of the district court's decision on the merits and the Secretary cross-appealed. Appellees also moved for a stay and injunction pending appeal, which a panel of this court granted following a hearing on March 10, 1992. *LaRouche v. Kezer,* No. 92–7263 (2d Cir. Mar. 10, 1992) (order granting stay and injunction pending appeal).[2] The injunction directed the Secretary to place appellees on the ballot in time for the March 24 primary elections. *Id.* at 1.

On March 31, 1993, after oral argument on the merits, this court issued an opinion affirming in part and reversing in part the decision of the district court. *LaRouche,* 990 F.2d at 41. We agreed with the district court's holding that the petition alternative complied with constitutional standards but concluded that the media recognition test, whether or not vague, increased ballot access and therefore was not unconstitutional. *Id.* at 38–39. We did not consider the "as applied" challenge because appellees had "abandoned" it as "in their view moot." *Id.* at 38. Thus, the appeal resulted in a complete victory for the Secretary.

Appellees moved for attorney's fees and costs before the district court on May 13, 1993, approximately six weeks after the decision of the appeal was handed down. The district court awarded attorney's fees to appellees, characterizing them as prevailing parties under 42 U.S.C. § 1988 "because they prevailed on their claim for immediate relief, despite the final adverse determination on the merits of the other claims." *LaRouche v.*

---

1. Appellees' "as applied" claim is essentially that the Secretary discriminated against them by placing "long shots" Republican David Duke and Democrat Larry Agran on the ballot but refusing to list appellees.

2. Chief Judge Oakes dissented from the decision granting the injunction and stay but approved the order in form. *LaRouche,* No. 92–7263, at 2.

*Kezer,* No. 2:92cv00095, at 7 (D.Conn. July 27, 1993) (*"Ruling on Attorney's Fees "*).

According to the district court, our grant of an injunction pending appeal permanently altered the legal relationship between the parties to the benefit of appellees. *Id.* at 5. The district court concluded that the stay panel never addressed the merits of appellees' constitutional claims. *Id.* at 5 n. 1. Nevertheless, the district court stated, "plaintiffs achieved their principal goal, placement on the ballot, despite the fact that their claims on the merits, that both statutes were unconstitutional, did not prevail." *Id.* at 6. The Secretary now appeals the district court's award of attorney's fees.

## DISCUSSION

In a civil rights case such as this one, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). A trial court's decision to award attorney's fees to a prevailing party is reviewed for abuse of discretion. *Cassuto v. Commissioner,* 936 F.2d 736, 740 (2d Cir.1991) (citing *Pierce v. Underwood,* 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988) and *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)).

■ The Supreme Court has held that "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby,* — U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). A party need not succeed on every issue raised by him, nor even the most crucial one. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S.

782, 791, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989); *Hanrahan v. Hampton,* 446 U.S. 754, 757–58, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (per curiam). Victory on a significant claim will suffice to give him prevailing party status. *Garland,* 489 U.S. at 791–92, 109 S.Ct. at 1493; *Hanrahan,* 446 U.S. at 757, 100 S.Ct. at 1989.

The degree of success on the merits does not alter plaintiff's eligibility for a fee award, although it may decrease the amount of the award. *See Farrar,* —— U.S. at ——, 113 S.Ct. at 574; *see also Garland,* 489 U.S. at 793, 109 S.Ct. at 1494. For example, a party who has received $1 in nominal damages has formally prevailed, because relief on the merits has "materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar,* —— U.S. at ——, 113 S.Ct. at 573;[3] *see also Garland,* 489 U.S. at 792–93, 109 S.Ct. at 1493–94 ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties...."). Nevertheless, where a plaintiff recovers only nominal damages, "the only reasonable fee is usually no fee at all." *Farrar,* —— U.S. at ——, 113 S.Ct. at 575.

■ The definition of prevailing parties is not limited to those who obtain a favorable final judgment following a full trial. *Hanrahan,* 446 U.S. at 756–57, 100 S.Ct. at 1987–89. Civil rights plaintiffs who gain enforceable relief through a consent decree or settlement are also entitled to attorney's fees. *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). Moreover, a court may award attorney's fees *pendente lite* to a party who has secured some relief on the merits either at trial or on appeal. *Hanrahan,* 446 U.S. at 757, 100 S.Ct. at 1989.[4] The Supreme Court has declined to hold,

3. The Court explained, "[a] plaintiff may demand payment for nominal damages no less than he may demand payment for millions of dollars in compensatory damages." *Farrar,* —— U.S. at ——, 113 S.Ct. at 574.

4. This court has also adopted the catalyst doctrine, which permits an award of attorney's fees to a plaintiff who obtains extrajudicial relief if "plaintiff's lawsuit was 'a catalytic, necessary, or

substantial factor in attaining the relief.' " *Rose v. Heintz,* 806 F.2d 389, 391 (2d Cir.1986) (citation omitted). This doctrine has not yet been explicitly approved or rejected by the Supreme Court. *See Hewitt v. Helms,* 482 U.S. 755, 763, 107 S.Ct. 2672, 2677, 96 L.Ed.2d 654 (1987). The catalyst doctrine does not apply here because the Secretary's compliance with our injunction did not constitute extrajudicial relief.

however, that a party who litigates to judgment and loses on all of its claims prevails within the meaning of the attorney's fees statute. *See Hewitt v. Helms,* 482 U.S. 755, 757, 760, 107 S.Ct. 2672, 2674, 2675, 96 L.Ed.2d 654 (1987).[5]

▪ An award of attorney's fees is not ordinarily justified where plaintiff's success is *de minimis* or technical. *Garland,* 489 U.S. at 792, 109 S.Ct. at 1493. Thus, the Supreme Court in *Hanrahan* denied attorney's fees to plaintiffs where the appellate court reversed directed verdicts against them and allowed the case to proceed to trial. *Hanrahan,* 446 U.S. at 756, 100 S.Ct. at 1987. The Court found that the parties had not prevailed, because

> [t]he Court of Appeals held only that the respondents were entitled to a trial of their cause. As a practical matter they are in a position no different from that they would have occupied if they had simply defeated the defendants' motion for a directed verdict in the trial court.

*Id.* at 758–59, 100 S.Ct. at 1989–90 (footnote omitted).

▪ The precise question posed by the case at bar is whether a party obtaining temporary or provisional relief, specifically an injunction pending appeal, prevails on the merits of its appealed claims. The standard in this circuit for a stay or injunction pending appeal is

> (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success"

on appeal, and (4) the public interests that may be affected.

*Hirschfeld v. Board of Elections,* 984 F.2d 35, 39 (2d Cir.1993) (citations omitted). As the standard makes clear, a grant of injunctive relief pending appeal does not depend solely or even primarily on a consideration of the merits. To determine whether a court's action is governed by its assessment of the merits "or represents a mere procedural maintenance of the status quo often requires close analysis of the decisional circumstances and reasoning underlying the grant of preliminary relief." *Webster v. Sowders,* 846 F.2d 1032, 1036 (6th Cir.1988).

▪ Two cases from other circuits are particularly instructive. In *Laurenzo v. Mississippi High Sch. Activities Ass'n,* 708 F.2d 1038 (5th Cir.1983) (per curiam), plaintiff claimed that he had prevailed by obtaining an *ex parte* injunction pending appeal. *Id.* at 1040. The plaintiff in *Laurenzo* was a high school student seeking to join the school's varsity baseball team, which had excluded him on the basis of a technicality. *Id.* at 1039. The district court dismissed the complaint for lack of jurisdiction because plaintiff failed to raise a substantial federal question. *Id.* at 1039–40. The injunction pending appeal allowed plaintiff to play on the school team. *Id.* at 1040. Before the appeal was resolved, Laurenzo graduated and the case became moot. *Id.*

As in this circuit, to obtain an injunction pending appeal in the Fifth Circuit, "the movant need not always show a 'probability of success' on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the

---

5. In *Hewitt,* the plaintiff was a prison inmate who had been placed in restrictive custody after a prison hearing committee found him guilty of misconduct during the course of a prison riot. 482 U.S. at 757, 107 S.Ct. at 2674. After numerous federal proceedings, the court of appeals found that plaintiff's misconduct conviction violated his due process rights and that he was entitled to judgment unless the prison established a defense of official immunity. *Id.* at 758, 100 S.Ct. at 1989. On remand, the district court found in favor of the prison on the basis of the qualified immunity defense. *Id.*

The plaintiff then filed a motion for attorney's fees, which the district court denied. *Id.* at 759, 100 S.Ct. at 1990. The court of appeals reversed on the ground that its earlier pronouncement that plaintiff's due process rights had been violated constituted a form of judicial relief. *Id.* The Supreme Court disagreed, stating that the only relief afforded plaintiff was "the moral satisfaction of knowing that a federal court concluded that his rights had been violated." *Id.* at 762, 100 S.Ct. at 1991. It found that plaintiff had not prevailed and added, "[a]ny other result strains both the statutory language and common sense." *Id.* at 763, 100 S.Ct. at 1992.

equities weighs heavily in favor of granting the stay." *Id.* at 1042 (citation omitted). The stay panel in *Laurenzo* gave no indication of its reasons for granting the injunction. *Id.* at 1041.

The Fifth Circuit in *Laurenzo* decided that because the equities in favor of plaintiff were strong enough to support the grant of an injunction without a finding that plaintiff would likely succeed on the merits, the court would not infer that relief had been based on the merits. *Id.* at 1043; *see also Webster,* 846 F.2d at 1036 (requiring unambiguous indication of probable success on the merits to support award of fees). The court held that plaintiff was not a prevailing party entitled to attorney's fees because he had not received a favorable determination of the merits of his claims. *Laurenzo,* 708 F.2d at 1043.

In contrast, the First Circuit awarded attorney's fees on the basis of an injunction pending appeal, but only "after careful consideration of [plaintiff's] legal claims." *Coalition for Basic Human Needs v. King,* 691 F.2d 597, 601 (1st Cir.1982). In *King,* Massachusetts state welfare recipients sued the state for resumption of benefits that were cut off when the state failed to pass a timely budget. *Id.* at 597. Although the district court denied plaintiffs' motion for a temporary restraining order, the First Circuit granted an injunction pending appeal of the order, directing the state to resume benefit payments. *Id.* at 598. The controversy was mooted when Massachusetts promulgated its new budget. *Id.* at 599.

The court acknowledged that in ordinary cases, an injunction pending appeal might not constitute a win on the merits. *Id.* at 600–01. It explained that courts generally deny attorney's fees where "the preliminary relief, although substantive, did not determine the merits of the plaintiffs' claim ..., but only maintained the status quo without purporting to address the merits." *Id.* at 601; *see also Webster,* 846 F.2d at 1036 (temporary relief that merely maintains the status quo does not justify award of fees). The stay panel in *King,* on the other hand, "was fully aware of the fact that, as a practical matter, its deci-

sion on the injunction pending appeal was a 'final' decision" and "that, given the press of time, it was most unlikely there would ever be a different legal outcome in the particular case." 691 F.2d at 601. *King,* however, is distinguishable from the case at hand because the controversy was mooted in its entirety and there was no final adverse decision on the merits.

The standard for preliminary injunctions, similar to the standard for injunctions pending appeal, dictates a weighing of the likelihood of success on the merits, irreparable injury, the balance of equities and the public interest. *Laurenzo,* 708 F.2d at 1041 n. 7. It has been held that where preliminary injunctive relief on the merits results from a correct interpretation of the law, an award of fees may be warranted although plaintiffs ultimately lose because of a subsequent change in the law. *See Frazier v. Board of Trustees of Northwest Miss. Regional Medical Ctr.,* 765 F.2d 1278, 1293–95 (5th Cir.), *modified,* 777 F.2d 329 (5th Cir.1985) (per curiam), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2252, 90 L.Ed.2d 697 (1986).

In *Frazier,* the district court issued a preliminary injunction "based on its view of the law as it existed at the time." *Id.* at 1293. The district court later vacated its grant of preliminary injunctive relief on the ground of two Supreme Court cases that were handed down after the original injunction issued. *Id.* at 1282. It granted summary judgment in favor of defendants for the same reasons. *Id.*

Plaintiff appealed, contending, *inter alia,* that the district court erred in not granting interim attorney's fees when it initially granted the preliminary injunction. *Id.* at 1291–92. The appellate court held that plaintiff should have been considered for an interim award of fees, stating, "[t]hat a plaintiff eventually loses on the merits of a section 1983 claim does not automatically undermine the validity of an interim attorney's fee award based on substantial relief that is granted in light of the then-current universe of legal principles." *Id.* at 1293–94.[6] Plaintiff did

---

6. *But see Palmer v. City of Chicago,* 806 F.2d 1316, 1320 (7th Cir.1986) (Posner, J.) (holding

that a preliminary injunction reversed on appeal does not support an award of attorney's fees),

not argue, nor did the court conclude, that plaintiff was entitled to an award of attorney's fees based on a final victory on the merits, as there was none. *Frazier* is distinguishable from the case at bar, because there is no viable argument here that appellees' constitutional claims would have succeeded under the law at the time of the injunction pending appeal.

Appellees argue, however, that the injunction pending appeal mooted the "as applied" claim and therefore constituted final relief on the merits of that claim. This argument fails for two reasons. First, a grant of provisional relief that merely preserves the status quo does not constitute final relief on the merits. Second, it is not clear that the grant of the injunction pending appeal rendered appellees' controversy moot.

This court has not yet addressed the issue of attorney's fees for plaintiffs who obtain preliminary injunctions or injunctions pending appeal and never obtain final judgments in their favor on the merits. It has discussed the propriety of attorney's fees based on the grant of a temporary restraining order ("TRO") in such situations. *Christopher P. v. Marcus*, 915 F.2d 794, 804–05 (2d Cir. 1990), *cert. denied*, 498 U.S. 1123, 111 S.Ct. 1081, 112 L.Ed.2d 1186 (1991). In *Christopher P.*, a minor had been attending a school established by the State of Connecticut for mentally ill, emotionally disturbed or abused children. *Id.* at 796–97. The minor's treatment team discharged him from the school in June 1985 after determining that he had achieved sufficient progress to return to community life. *Id.* at 797. The child and his mother sued on the ground that he was improperly discharged, and the district court granted a TRO requiring the child to be readmitted to the school in September 1985. *Id.* at 797–98.

At the conclusion of the lawsuit, the district court granted summary judgment for the defendants but awarded attorney's fees

to plaintiffs. *Id.* at 798. We rejected plaintiffs' argument on appeal that the grant of the TRO entitled him to an award of fees. *Id.* at 805. The standard for granting a TRO requires a finding of immediate and irreparable injury but not a specific determination as to the merits. *See* Fed.R.Civ.P. 65(b). Thus, we stated that "the procurement of a TRO in which the court does not address the merits of the case but simply preserves the status quo to avoid irreparable harm to the plaintiff is not by itself sufficient to give a plaintiff prevailing party status." *Christopher P.*, 915 F.2d at 805.

To preserve the status quo a court may require the parties to act or to refrain from acting.[7] For example, in *Christopher P.*, the TRO that "simply preserve[d] the status quo" directed the State of Connecticut to readmit plaintiff to its school for mentally disturbed children after having discharged him. 915 F.2d at 805. Likewise, in *Bly v. McLeod*, 605 F.2d 134 (4th Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980), a TRO requiring the State of South Carolina to allow plaintiffs to vote by absentee ballot was considered merely a preservation of the status quo. *Id.* at 137.

Plaintiffs in *Bly* were a group of chemistry professors intending to be out of the state on the day of South Carolina's Democratic primary. *Id.* at 136. The court issued a TRO permitting plaintiffs to vote in the primary by means of absentee ballots. *Id.* The South Carolina legislature later amended the state's voting laws, thereby rendering the case moot. *Id.* Plaintiffs then moved for attorney's fees, which the district court granted. *Id.* at 137. The appellate court reversed on the ground that the TRO did not constitute a decision on the merits as to the parties' respective rights. *Id.*

In both *Bly* and *Christopher P.*, plaintiffs succeeded in obtaining part or all of the relief

---

*cert. denied*, 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987).

7. *See Black's Law Dictionary* 1410 (6th ed. 1990) ("'[s]tatus quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy").

they sought. Because the relief did not result from a determination on the merits, however, plaintiffs did not prevail. A party prevails "when he establishes a legal *entitlement* to what he seeks, not when what he seeks is actually delivered." *King,* 691 F.2d at 600.[8] The courts in *Bly* and *Christopher P.* did not determine that plaintiffs had a legal right or entitlement to the relief granted, only that plaintiffs would suffer irreparable injury in the absence of relief. Therefore, an award of fees in those cases was not justified.

Similarly, the fact that appellees in this case received the temporary remedy of being placed on the ballot did not change their legal rights, it merely allowed them ballot access as the best practical balancing of equities and harms under the circumstances. Although the stay panel could have granted the injunction pending appeal based on a determination as to the merits, there is no indication that it did so. To the contrary, the district court specifically found that the injunction pending appeal was not based on the merits. *Ruling on Attorney's Fees,* at 5 n. 1. The district court acknowledged that appellees did not ultimately prevail on any of their claims on the merits. *Id.* at 6.

Neither the district court nor this court ruled on the "as applied" claim in their decisions on the merits. *Id.* at 5. The district court considered the claim moot because its decision that the media recognition statute was unconstitutional on its face obviated the need to address whether it was unconstitutional as applied to appellees. *LaRouche,* 787 F.Supp. at 305. This court considered the appellees to have abandoned the claim "as in their view moot." *LaRouche,* 990 F.2d at 38. Neither court intimated that the claim was mooted because the injunction pending appeal had provided final relief. Therefore, the district court correctly characterized appellees' argument as "not strictly accurate." *Ruling on Attorney's Fees,* at 5.

As should be apparent from the previous discussion, mootness is not determinative as to the propriety of an award of attorney's fees. "[A] determination of mootness neither precludes nor is precluded by an award of attorneys' fees. The attorneys' fees question turns instead on a wholly independent consideration: whether plaintiff is a 'prevailing party.'" *Doe v. Marshall,* 622 F.2d 118, 120 (5th Cir.1980), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981);[9] *see also Grano v. Barry,* 783 F.2d 1104, 1109 (D.C.Cir.1986) (citing *Doe v. Marshall*).

The existence of a mooted claim may create ambiguity where neither the district court nor the appellate court has the opportunity to render a final ruling on the merits of the claim. *See King,* 691 F.2d at 601. An injunction pending appeal that is not clearly based on the merits merely heightens the confusion. As a general matter, a court should not resolve the uncertainty in favor of a finding that plaintiff prevailed. *Webster,* 846 F.2d at 1036; *Laurenzo,* 708 F.2d at 1043. In this case, where the "as applied" claim could be characterized as either moot or abandoned, we are even less willing to infer that the injunction pending appeal afforded relief on the merits of that claim.

## CONCLUSION

If plaintiff loses the appeal of its claims on the merits, an award of attorney's fees based on an injunction pending appeal is improper.[10] If a claim is mooted, interim injunctive relief may be a basis for an award of attorney's fees, if plaintiff has prevailed on the merits at the interim stage. Because appellees neither won their appeal on the merits nor obtained interim relief clearly based on

---

8. This statement might not apply in a catalyst doctrine case. *See supra* n. 4.

9. We rely on *Doe v. Marshall* only for its statement of the law on mootness, not for its definition of a prevailing party as one who obtains the primary relief sought. This definition of prevailing party was rejected by the Supreme Court in *Garland,* 489 U.S. at 784, 790, 109 S.Ct. at 1492.

10. An exception to this principle arguably may exist if a final decision on the merits adverse to plaintiff is based on changes in the law that occurred subsequent to the grant of preliminary

the merits, the judgment of the district court is reversed.[11]

relief. *See Frazier*, 765 F.2d at 1293–94; *supra* text accompanying note 6.

11. In light of this holding, we find it unnecessary to address whether appellees could have been awarded fees without being awarded costs.