Suzanne **HALEY**, Ruth V. Verbal, Barbara J. Scott, James H. Watson, Nadine Jones, Joy King, Robert Matthews, Deborah Allen, and A. Joshua Ehrlich, Plaintiffs,

v.

George E. **PATAKI**, as Governor of the State of New York and the State of New York, Defendants.

No. 95–CV–550.

United States District Court, N.D. New York.

Oct. 3, 1995.

Zwerling, Schachter, Zwerling & Koppell, New York City, for plaintiffs; Kenneth J. Munnelly, of counsel.

Dennis C. Vacco, Attorney General of the State of New York, Department of Law, Albany, NY, for defendants; Alan S. Kaufman, of counsel.

**MEMORANDUM, DECISION & ORDER**

McAVOY, Chief Judge.

## I. BACKGROUND

This action was brought against New York State and George E. Pataki as Governor of New York State for a declaratory judgment that plaintiffs' constitutional and statutory rights were violated by the withholding of their bi-weekly salary payments pending passage of the state budget. Plaintiffs sought a preliminary injunction and on May 3, 1995, this Court issued a Memorandum, Decision and Order granting plaintiffs' request for a preliminary injunction and dismissing the State of New York as a defendant. The Court ordered that insofar as Governor Pataki undertook to send future appropriation bills and messages of necessity to the legislature for the payment of state workers, he could not exclude payment to legislative employees from such bills, and a portion of those same funds had to be allocated for the payment of legislative employees. Defendants filed a notice of appeal on May 3, 1995 and filed a motion for an expedited appeal on May 4, 1995. Defendants then sought a stay of the preliminary injunction pending the resolution of the appeal first from the district court and then from the Second Circuit Court of Appeals. Both stay requests were denied and the Governor has since complied with the May 3, 1995 order by paying legislative employees. The Governor submitted appropriation bills which complied with this order on May 9, 1995 and May 15, 1995.

Plaintiffs then sought attorneys' fees in connection with the preliminary injunction motion. This Court by a Memorandum, Decision, and Order dated July 3, 1995, reserved decision on the motion pending the outcome of the defendants' appeal. On July 19, 1995, the Second Circuit vacated this Court's preliminary injunction and dismissed the appeal in this case as moot. Plaintiffs have now renewed their motion for attorneys' fees and filed supplemental papers.

## II. DISCUSSION

### A. Type of Action

As noted in the May 3, 1995 order granting a preliminary injunction, the Court treated the action as one arising under 42 U.S.C. § 1983, and thus, does so again for purposes of the instant motion since plaintiffs seek attorneys' fees in connection with the preliminary injunction. As the Court noted in its May 3, 1995 order, and reaffirmed in its July 3, 1995 order, "although not mentioned in the motion papers, this suit can be nothing other than an action pursuant to 42 U.S.C. § 1983, and the court will entertain it as such."

### B. Standard for Granting Attorneys' Fees

42 U.S.C. § 1988(b) allows a court, in its discretion, to award reasonable attorneys' fees as part of the costs of an action under 42 U.S.C. § 1983. In order to qualify for receipt of attorneys' fees, a party must be a "prevailing party." That is, the party must have obtained "at least some of the relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, ——–——, 113 S.Ct. 566, 572–73, 121 L.Ed.2d 494 (1992). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at ——, 113 S.Ct. at 573.

"A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of litigation." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). However, "it seems clearly to have been the intent of Congress to permit such an interlocutory award only to a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal." *Hanrahan v. Hampton*, 446 U.S. 754, 756, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980). As the Supreme Court has stated:

It seems apparent ... that Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims. For only in that event has there been a determination of the "substantial

rights of the parties," which Congress determined was a necessary foundation for departing from the usual rule in this country that each party is to bear the expense of his own attorney.

*Id.*

The Second Circuit has ruled that the grant of a stay or injunction pending appeal is not necessarily a victory which entitles a plaintiff to attorneys' fees. *See LaRouche v. Kezer,* 20 F.3d 68, 75–76 (2d Cir.1994) (denying attorneys' fees to a party who had been granted a stay pending appeal). Although the stay pending appeal in *LaRouche* clearly involved consideration of a different standard than did the preliminary injunction in this case, *id.* at 72, *LaRouche* is somewhat instructive in considering the instant case. More specifically, the *LaRouche* court distinguished the First Circuit case, *Coalition for Basic Human Needs v. King,* 691 F.2d 597 (1st Cir.1982), which presented a situation similar to the one at hand.

In *King,* Massachusetts state welfare recipients sued the state for resumption of benefits pending passage of an untimely state budget. Although the district court denied plaintiffs' motion for a temporary restraining order, the First Circuit granted an injunction pending appeal which required the state to resume payment of welfare benefits. The case became moot when the state passed its budget, and the First Circuit ultimately granted attorneys' fees to plaintiffs as prevailing parties on the injunction pending appeal. *LaRouche,* 20 F.3d at 73, *citing, King,* 691 F.2d at 597–99. Significantly, in *King* the plaintiffs were awarded attorneys' fees notwithstanding the fact that the controversy became entirely moot and there was no final adverse decision on the merits. *LaRouche,* 20 F.3d at 73.

The *LaRouche* court does not necessarily require denial of attorneys' fees, as defendants suggest. Rather, the *LaRouche* and *King* decisions require the Court to assess whether the plaintiffs have had any determination of their claims on the merits, before deciding whether to award attorneys' fees. *LaRouche,* 20 F.3d at 73 (no award of fees without some determination of the merits); *King,* 691 F.2d at 600–601 (preliminary

determination may constitute sufficient determination of merits to be "close to a final judgment"). "[M]ootness is not determinative as to the propriety of an award of attorney's fees." *LaRouche,* 20 F.3d at 75. Rather, the critical inquiry is whether the party prevailed. *Id.* The Court notes, however, that "[a]s a general matter, a court should not resolve the uncertainty in favor of a finding that plaintiff prevailed." *Id.* (citation omitted).

As with the *King* Court, this Court recognized that New York would pass a budget, and thus, the relief sought by the plaintiffs was temporary relief. The precise relief sought was compelled payment "that would tide the [plaintiffs] over until the budget was passed and regular checks once more arrived." *King,* 691 F.2d at 601. Moreover, as with *King,* the Court was cognizant of the fact that its decision on the preliminary relief "would require the state to release millions of dollars to" its legislative employees before a budget was passed. *Id.* The Court made its decision only after fully and carefully considering the legal claims before the Court, and made the decision to grant plaintiffs' preliminary relief "with full awareness that ... it was most unlikely there would ever be a different legal outcome in the particular case." *Id.*

The Court granted mandatory injunctive relief, which required the plaintiffs to make a "clear showing of probable success." *Dopp v. Franklin Nat'l Bank,* 461 F.2d 873, 878 (2d Cir.1972); *Flood v. Kuhn,* 309 F.Supp. 793, 797–98 (S.D.N.Y.1970). Moreover, the Court noted that "[m]andatory injunctions are not granted in doubtful cases in which the facts and law do not clearly favor the moving party." *Zurn Constructors, Inc. v. B.F. Goodrich Co.,* 685 F.Supp. 1172, 1181 (D.Kan.1988). Nevertheless, the Court stated in the May 3, 1995 order that "[t]he court has little difficulty in finding that the plaintiffs have established a showing of likelihood of success on their claim under the Contract Clause." Based on the foregoing, this Court finds that there was substantial consideration of the merits of this case, and thus, the plaintiffs are prevailing parties, such that they are entitled to an award of legal fees.

The Court now turns to the issue of determining that award.

## C. Calculation of Attorneys' Fees

█ "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. In general, the reasonable rate used in a determination of the amount of attorneys' fees to be awarded "should be calculated according to the prevailing rates in the community *'for similar services by lawyers of reasonably comparable skill, experience and reputation.'"* *Cefali v. Buffalo Brass Co., Inc.,* 748 F.Supp. 1011, 1018 (W.D.N.Y.1990) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058–59 (2d Cir.1989)), *cert. denied,* 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990) (emphasis in original). The Second Circuit has articulated that the proper rule is for the district court to "consider the prevailing rates in the district in which the court sits." *Polk v. New York State Dep't. of Correctional Servs.,* 722 F.2d 23, 25 (2d Cir.1983) (awarding attorneys' fees under Section 1988).

█ The rationale for this rule lies in its simplicity and neutrality. *Donnell,* 682 F.2d at 251. It allows the district court to determine "the prevailing market rate within its jurisdiction, an inquiry about which it should develop expertise." *Id.* Further, such a rule does not work

> to any clear advantage for either those seeking attorneys' fees or those paying them. High-priced attorneys coming into a jurisdiction in which market rates are lower will have to accept those lower rates for litigation performed there. Similarly, some attorneys may receive fees based on rates higher than they normally command if those higher rates are the norm for the jurisdiction in which the suit was litigated.

*Id.* Therefore, the appropriate hourly fee to be applied in calculating an award of attorneys' fees is the prevailing rate in the district in which the suit is litigated, irrespective of the fee usually charged by the attorney.

█ Certain exceptions to this rule have been articulated. Such exceptions include: (1) the need for "special expertise of counsel from a distant district," *Polk,* 722 F.2d at 25, (2) "when local counsel are unwilling to handle the case," *In Re "Agent Orange" Product Liability Litigation,* 611 F.Supp. 1296, 1308 (E.D.N.Y.1985), *aff'd in part and rev'd in part,* 818 F.2d 226 (2d Cir.1987), and (3) "when a lawyer files a suit in his or her home district that is properly maintainable there, and the case is transferred to the forum district...." *Id.* (*quoting, Polk,* 722 F.2d at 25). However, the District of Columbia Circuit articulated that a case for which much of the work must be performed away from the district court's community does not alone provide a sufficient reason for deviating from the general rule. *Donnell,* 682 F.2d at 252.

█ This case does not fit into any of the articulated exceptions to the locality rule. The plaintiffs argue that they retained certain attorneys based on their reputations and familiarity with the workings of the state government. However, it was not the legislative and budgetary process that was the central focus of the legal issues in this case. Rather, the case turned on whether by withholding the bi-weekly paychecks of legislative employees the defendants had violated the Contract Clause at Article I, § 10 of the United States Constitution. Accordingly, the Court will apply the prevailing market rates found within the Northern District of New York in its calculation of attorneys' fees to be awarded to plaintiffs. Therefore, the court will award attorneys' fees in the present action based on the following hourly rates:

| Attorney | Type of Work | Hourly Rate |
| --- | --- | --- |
| Partner | Legal | $150 |
| Associate | Legal | $100 |

Applying the above rates to the instant case, the Court makes the following adjustments to the fee schedules attached to the affidavits submitted in support of plaintiffs' motion: (1) as to attorney G. Oliver Koppell, partner in the law firm of Zwerling, Schachter, Zwerling and Koppell, LLP, adjusting the hourly billing rate, reduce the amount sought to eleven thousand eight hundred sixty-five 0/100 ($11,865.00) dollars; (2) as to attorney

Dan Drachler, of Counsel[1] to the law firm of Zwerling, Schachter, Zwerling and Koppell, LLP, adjusting the hourly billing rate, reduce the amount sought to ten thousand one hundred ninety and 0/100 ($10,190.00) dollars; (3) as to Kenneth J. Munnelly, practicing out of his own law firm, reduce the amount sought to fourteen thousand four hundred and 0/100 ($14,400.00) dollars;[2] (4) as to attorney Francine Pickett, partner in the law firm of Coyle and Pickett, adjusting the hourly billing rate, reduce the amount sought to one thousand nine hundred eighty-seven and 50/100 ($1,987.50) dollars; (5) as to attorney Hillary Sobel, an associate with the law firm of Zwerling, Schachter, Zwerling and Koppell, LLP, adjusting the hourly billing rate, reduce the amount sought to eight hundred sixty and 0/100 ($860.00) dollars; and (6) as to costs, as set forth in the Supplemental Affirmation, award the amount of four thousand seven hundred twenty-six and 61/100 ($4,726.61) dollars. The total award, therefore, amounts to forty-four thousand twenty-nine and 11/100 ($44,029.11) dollars.

■ The calculation of the fee award does not end with the computation of a sum from the reasonable fees multiplied by the hours expended. Other factors "may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. The Court finds no factors to warrant the adjustment of the reasonable fee amount. Accordingly, the Court awards attorneys' fees to the plaintiffs as set forth above.

**IT IS SO ORDERED.**

---

1. Billed at the Zwerling firm's associate rate.

2. Includes time set forth in Supplemental Affirmation.